FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 18, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RUTH O.,<br><br>                    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, ACTING<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>                    Defendant. | NO:  1:21-CV-03026-LRS<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 17, 19.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by Attorney D. James Tree.  Defendant is

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No further action need be taken to continue this suit.  *See* 42 U.S.C. § 405(g).

ORDER ~ 1

represented by Special Assistant United States Attorney Frederick Fripps.  The

Court has reviewed the administrative record, the parties' completed briefing, and

is fully informed.  For the reasons discussed below, the Court **GRANTS**

Defendant's Motion for Summary Judgment, ECF No. 19, and **DENIES** Plaintiff's

Motion for Summary Judgment, ECF No. 17.

## JURISDICTION

Plaintiff Ruth O.[2] protectively filed applications for Disability Insurance

Benefits (DIB) and Supplemental Security Income (SSI) on February 15, 2018, Tr.

109, 124, alleging an onset date of December 31, 2016, Tr. 316, 323, due to

depression, bipolar disorder, sleep apnea, arthritis in her neck, carpal tunnel

syndrome, insomnia, and anxiety, Tr. 350.  Plaintiff's applications were denied

initially, Tr. 180-85, and upon reconsideration, Tr. 193-214.  A hearing before

Administrative Law Judge Chris Stuber ("ALJ") was conducted on July 14, 2020.

Tr. 70-99.  Plaintiff was represented by a non-attorney representative and testified

at the hearing with the assistance of an interpreter.  *Id*.  The ALJ also took the

testimony of vocational expert William Weiss.  *Id*.  The ALJ entered an

unfavorable decision on July 27, 2020.  Tr. 21-36.  The Appeals Council denied

review on January 4, 2021.  Tr. 1-5.  Therefore, the ALJ's July 27, 2020 decision

_____

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's

first name and last initial, and, subsequently, Plaintiff's first name only, throughout

this decision.

ORDER ~ 2

became the final decision of the Commissioner.  The matter is now before this

Court pursuant to 42 U.S.C. §§ 405(g); 1383(c).  ECF No. 1.

## BACKGROUND

The facts of the case are set forth in the administrative hearing and

transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.

Only the most pertinent facts are summarized here.

Plaintiff was 44 years old at the alleged onset date.  Tr. 316.  Plaintiff

graduated from high school in 1990.  Tr. 76-77, 315.  At the time of her

application, she alleged that she spoke Spanish and could not understand or read

English.  Tr. 77, 349.  At application, Plaintiff reported that her work history

included the job of housekeeper.  Tr. 77, 351.  She reported that she stopped

working on December 31, 2016, due to her impairments.  Tr. 77, 350.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v.*

*Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five,

the burden shifts to the Commissioner to establish that (1) the claimant is capable

of performing other work; and (2) such work "exists in significant numbers in the

national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

At step one, the ALJ found that Plaintiff had engaged in substantial gainful

activity since the alleged onset date, December 31, 2016.  Tr. 24.  At step two, the

ALJ found that Plaintiff had the following severe impairments: degenerative disc

disease, cervical spine; obesity; bilateral carpal tunnel syndrome, status post

release; major depressive disorder; and bipolar disorder.  Tr. 25.  At step three, the

ALJ found that Plaintiff's impairments or combinations of impairments did not

meet or equal the severity of one of the listed impairments.  Tr. 26.

The ALJ then found that Plaintiff had the RFC to perform light work as

defined in 20 C.F.R. § 404.1567(b) and 416.967(b) with the following

nonexertional limitations:

> The claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and or walk about six hours in an eight-hour workday and can sit about six hours. She can frequently climb ramps and stairs but only occasionally ladders, ropes, or scaffolds. She can frequently stoop, kneel, crouch, and crawl. She can have only occasional exposure to excessive vibrations. She is limited to frequently handling and fingering bilaterally. She is able to understand, remember, and carryout simple, routine instructions with only occasional changes in the work setting. She can have brief and superficial interactions with the public and occasional interactions with coworkers and supervisors.

Tr. 28. At step four, the ALJ identified Plaintiff's past relevant work as a

housekeeper, maid and found she is capable of performing this past relevant work.

Tr. 35. Based on this, the ALJ found that Plaintiff had not been disabled within the

meaning of the Social Security Act at any time from the alleged onset date,

December 31, 2016, through the date of the decision. Tr. 36.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her DIB under Title II and SSI under Title XVI. ECF No. 17. Plaintiff raises the

following issues for this Court's review:

1. Whether the ALJ properly addressed the medical opinions in the record; and

2. Whether the ALJ properly addressed Plaintiff's symptom statements.

///

///

ORDER ~ 8

**DISCUSSION**

**1.    Medical Opinions**

Plaintiff challenges the ALJ's treatment of the opinions of Thomas Genthe, Ph.D., Ivonne Garcia, MHP, MSW, and Shellie Marthini, ARNP.  ECF No. 17 at 12-20.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must weigh medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer give any specific evidentiary weight to medical opinions or prior administrative medical findings, including those from treating medical sources.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ will consider the persuasiveness of each medical opinion and prior administrative medical finding, regardless of whether the medical source is an Acceptable Medical Source.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The ALJ is required to consider multiple factors, including supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program).  *Id.*  The regulations emphasize that the supportability and consistency of the opinion are the most important factors, and the ALJ must articulate how he

considered those factors in determining the persuasiveness of each medical opinion or prior administrative medical finding.  20 C.F.R. §§ 404.1520c(b), 416.920c(b). The ALJ may explain how he considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record.  *Id.*

Supportability and consistency are further defined in the regulations:

(1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c), 416.920c(c).[3]

---

[3]The parties disagree over whether Ninth Circuit case law continues to be controlling in light of the amended regulations, specifically whether an ALJ is still required to provide specific and legitimate reasons for discounting a contradicted opinion from a treating or examining physician.  ECF Nos. 13 at 14-17, 13 at 13-15.  This Court has previously concluded that the regulations displace Ninth Circuit precedent.  *Emilie K. v. Saul*, No. 2:20-CV-00079-SMJ, 2021 WL

## A.    Thomas Genthe, Ph.D.

On February 11, 2020, Dr. Genthe evaluated Plaintiff and completed a Psychological/Psychiatric Evaluation form for the Washington Department of Social and Health Services (DSHS).  Tr. 1010-17.  He diagnosed Plaintiff with major depressive disorder, other specific anxiety disorder, and stimulate use disorder (cocaine) in remission.  Tr. 1013.  He opined that Plaintiff had a moderate limitation in seven basic work activities.  Tr. 1013.  A moderate limitation is defined as "a significant limitation on the ability to perform the activity."  Tr. 1013.  He stated that Plaintiff's limitations would last for six to nine months with available treatment.  Tr. 1014.  Dr. Genthe concluded his evaluation form with "[a]t this time, her symptoms are not being managed sufficiently, which are likely to interfere with her ability to initiate or maintain future employment. . . she is unlikely to function adequately, and/or consistently in a work setting until her psychological symptoms have been managed more effectively."  Tr. 1014.

The ALJ failed to state whether he found the opinion to be persuasive, but he provided four reasons for not adopting all the opined limitations: (1) that Dr. Genthe did not review any treatment records; (2) that Dr. Genthe relied on Plaintiff's symptom statements; (3) that the opinion was inconsistent with

864869, *3-4 (E.D. Wash. Mar. 8, 2021*), reversed on other grounds*, No. 21-35360 (9th Cir. Dec. 10, 2021).

Plaintiff's overall performance on mental status examinations; and (4) that the opinion was inconsistent with the minimal observations of psychiatric difficulties. Tr. 34.

The ALJ's first reason for not adopting the opinion, that he did not review any treatment records, does not address supportability or consistency but is considered an "other" factor that the ALJ may, but was not required to, consider. 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5) ("This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim. . ."). Here, Dr. Genthe stated he did not review other records at the time of his evaluation. Tr. 1010 ("No records were provided for review."). Therefore, this is a valid reason to not adopt the opinion.

The ALJ's second reason for not adopting the opinion, that Dr. Genthe relied on Plaintiff's symptom statements, addresses the opinion's supportability. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her opinion(s) . . . the more persuasive the medical opinions . . . will be"). Dr. Genthe stated that he based his opinion on the behavioral observations made, information gained during the clinical interview, and the Personality Assessment Inventory (PAI) profile score. Tr. 1014. However, Dr. Genthe's observations were normal except for a depressed affect, Tr. 1015, and the PAI was not interpreted: "For this protocol, the number of uncompleted items is too great

(i.e. greater than 5%) to generate a profile that would not have questionable

validity.  No clinical interpretation is provided for this protocol," Tr. 1017.

Therefore, the only remaining basis for Dr. Genthe's opinion was information

gained during the clinical interview.  As such, the ALJ's determination that Dr.

Genthe relied heavily on Plaintiff's statements is supported by substantial

evidence.  As discussed at length below, the ALJ provided sufficient reasons for

not crediting Plaintiff's symptom statements.  Therefore, this is a valid reason for

not adopting the opinion.

The third reason the ALJ provided for not adopting Dr. Genthe's opinion,

that it was inconsistent with Plaintiff's overall performance on mental status

examinations, addresses consistency.  Plaintiff summarized the mental status

exams in depth when discussing Plaintiff's symptom statements, Tr. 30, and then

cited to these examinations when discussing Dr. Genthe's opinion, Tr. 34.  The

mental status exams were typically normal.  Tr. 30 *citing* Tr. 822 (July 26, 2018

normal mental status exam), Tr. 835 (June 7, 2018 normal mental status exam), Tr.

842 (May 8, 2018 normal mental status exam), Tr. 974 (August 29, 2018 normal

mental status exam).

The ALJ also cited Dr. Genthe's own mental status exam, which speaks to

the supportability of the opinion.  Tr. 34.  Dr. Genthe found several abnormalities

in Plaintiff's mental status exam including understanding, fund of knowledge,

abstract thought, concentration, insight, and judgment.  Tr. 1015-16.  However, the

ALJ acknowledged these abnormalities and found that the interview was conducted in English with no evidence of an interpreter. Tr. 30. Plaintiff has difficulty reading and understanding English, and an interpreter was present at the ALJ's hearing. Tr. 72-73, 77. The language difference likely accounts for these abnormal results. To assess fund of knowledge Plaintiff was required to answer the following questions: "President during the US Civil War;" "How are bats able to fly in the dark;" and "Number of weeks in the year." Tr. 1016. Plaintiff answered these questions with "I don't know." Tr. 1016. To assess concentration, Plaintiff was asked to spell the word WORLD forward and backwards, which she was unable to do correctly. Tr. 1016. To assess abstract thought, Plaintiff was asked what a grape and a papaya had in common, to which she replied "nothing." Tr. 1016. Therefore, this is a sufficient reason to not adopt Dr. Genthe's opinion.

The fourth reason the ALJ provided for not adopting Dr. Genthe's opinion, that it was inconsistent with the minimal observations of psychiatric difficulties, addresses consistency. The ALJ summarized the psychiatric observations in the record when discussing Plaintiff's symptom statements, Tr. 31, and then cited to these observations when discussing the opinion. Tr. 34. These observations were consistently minimal and displayed normal mood, affect, speech, and/or eye contact. Tr. 537, 560, 570, 624, 629, 633, 759, 766, 774, 788, 827, 863, 870, 879, 1030, 1039, 1045, 1110, 1132, 1145, 1259, 1261, 1264, 1284, 1290, 1321. Plaintiff only occasionally presented with a depressed mood. Tr. 899, 1085, 1093,

1105.  Once Plaintiff presented with a "not so good" mood, poor attention span, and was distractible, Tr. 1358-61, but this was not a consistent state represented in the record.  The ALJ discussed all this evidence when determining that the record showed minimal psychiatric observations.  Tr. 31.  Here, the ALJ's determination is supported by substantial evidence and will not be disturbed by the Court.

### B.    Ivonne Garcia, MHP, MSW

On March 10, 2018, Ms. Garcia stated that Plaintiff was diagnosed with major depressive disorder and that she was limited 1-10 hours of work activities a week.  Tr. 999.  When asked about lifting and carrying restrictions, Ms. Garcia opined that Plaintiff was unable to lift at least two pounds or unable to stand or walk.  Tr. 1000.  She opined that Plaintiff's limitations would last for six months.  Tr. 1000.

On December 21, 2018, Ms. Garcia stated that Plaintiff was diagnosed with major depressive disorder and that she was limited to 1-10 hours of work activities a week.  Tr. 995.  When asked about lifting and carrying limitations, Ms. Garcia indicated Plaintiff was only capable of light work activities.  Tr. 996.  She opined that Plaintiff's limitations would last for six months.  Tr. 996.  Further, she completed a Mental Source Statement form.  Tr. 979-82.  She opined that Plaintiff had a marked limitation in five mental work functions and a moderate limitation in thirteen mental work functions.  Tr. 979-80.  She stated that Plaintiff would likely be off task 21-30% of the time during a 40-hour work week.  Tr. 981.

On June 20, 2019, Ms. Garcia stated that Plaintiff was diagnosed with major depressive disorder and borderline personality disorder.  Tr. 1004.  She stated that Plaintiff's work activity was limited to 1-10 hours a week.  Tr. 1004.  When asked about her limitations in lifting and carrying, and Ms. Garcia stated that Plaintiff was capable of light work.  Tr. 1005.  She stated that the opined limitations would last for twelve months.  Tr. 1005.

The ALJ found all of Ms. Garcia's opinions to be not persuasive.  Tr. 34.  First, the ALJ found that the opinions were provided for DSHS "under their criteria for State benefits, and under our Agency regulations we consider the decision of other agencies and nongovernmental agencies inherently neither valuable nor persuasive."  Tr. 34.  The ALJ is accurate that determinations by other agencies and nongovernmental agencies are deemed "inherently neither valuable nor persuasive" under the new regulations, 20 C.F.R. §§ 404.1520b(c), 416.920c(c), and the ALJ will not provide any analysis regarding these determinations, 20 C.F.R. §§ 404.1504, 416.904.  However, the forms completed by Ms. Garcia are medical opinions used to make the ultimate State agency determination and not the State agency determinations themselves.  *See* 20 C.F.R. §§ 404.1613(a)(2), 416.913(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) . . .").  The ALJ is required to consider all medical opinions.  20 C.F.R. §§ 404.1520c(b), 416.920c(b).  Therefore, these medical opinions cannot be found not persuasive simply because

they were ordered by DSHS.

Next, the ALJ found the opinions to be inconsistent with each other by noting that the ability to perform work activities for 1-10 hours a week was inconsistent with being severely limited, which was defined as unable to lift at least 2 pounds or unable to stand or walk." Tr. 34. The number of hours a person can perform work related activities is not inconsistent with the finding of severely limited. This is because the severity limited response was in relation to a question about Plaintiff's lifting and carrying limitations, not the ability to sustain work activity. Therefore, this reason is not supported by substantial evidence.

Despite the ALJ's first two reasons for finding the opinions to be not persuasive, the subsequent reasons were sufficient to support his determination. S*ee Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

The ALJ rejected the December 2018 Mental Source Statement form because it "contains no support or basis for the limitations assigned." Tr. 34. This speaks directly to supportability, and the form has no discussion of Plaintiff's impairments or clinical observations to support the opinion. Therefore, this is a sufficient reason to reject the opinion.

The ALJ found that the statements made in the 2019 DSHS form were inconsistent with Plaintiff's later reports. Tr. 34. Ms. Garcia stated that Plaintiff

experienced conflict around people, was unable to regulate her emotions, and was easily irritated around people. Tr. 1004-05.  This was inconsistent with Plaintiff's statement to Dr. Genthe that she had no significant difficulty getting along with others.  Tr. 1010.  Therefore, the ALJ's reason is supported by substantial evidence.

The ALJ also found that the opinions were inconsistent with Plaintiff's performances on the mental status examinations and the minimal observations of psychiatric difficulties.  Tr. 34.  As discussed at length above, the overall trend of the medical evidence demonstrates normal mental status examines and minimal observations of psychiatric difficulties.  Therefore, this reason addresses consistency and is supported by substantial evidence.  Therefore, the Court will not disturb the ALJ's treatment of the opinion.

### C.    Shellie Marthini, ARNP

On June 18, 2020, Nurse Marthini completed a Medical Report Form.  Tr. 1352-54.  She opined that if Plaintiff attempted to work a 40-hour a week schedule, it was more probably then not that Plaintiff would miss four or more days of work per month due to her medical impairments: "If she's required to use her right hand in repetitive movements it will increase pain [and] swelling causing longer healing time." Tr. 1353.  She limited Plaintiff to sedentary work and only frequent handling with the right upper extremity.  Tr. 1353.  She stated that Plaintiff's opinions had been present since April of 2020: "She had an appointment 6/9/2020

with me and stated that she had been having pain since April. However, in previous visits had not complained of this problem or any symptoms." Tr. 1354.

The ALJ found the opinion to be somewhat persuasive stating that "[t]he suggestions the claimant would miss four or more days of work per month and can only perform sedentary work activity include very little support or basis." Tr. 33. The ALJ is accurate; there is no discussion on the form providing any medical evidence in support of this portion of the opinion. Tr. 1353.

The ALJ also found that the opined increased pain resulting from repetitive movements with the right was inconsistent with the opined limitation to frequent handling. Tr. 33. The Court agrees that the narrative addressing repetitive movements with the right hand resulting in missing work four or more days a month is inconsistent with the opined ability to frequently handle with the right upper extremity. Tr. 1353. The ALJ's reasons address the supportability and consistency of the opinion and are supported by substantial evidence. Therefore, the Court will not disturb the ALJ's treatment of the opinion.

## 2. Plaintiff's Symptom Statements

Plaintiff argues that the ALJ failed to properly address her symptom statements. ECF No. 17 at 4-12.

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "The claimant is not required to show that [her] impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Id*.

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).

The ALJ stated that Plaintiff's statements about intensity, persistence, and limiting effects of her symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 29. The ALJ gave five reasons for rejecting Plaintiff's symptom statements: (1) Plaintiff made inconsistent statements regarding her medication side effects; (2) Plaintiff's allegations were inconsistent with the minimal and mild physical and psychological examinations; (3) Plaintiff routinely appeared in no acute distress; (4) Plaintiff's allegations are inconsistent with her daily activities; and (5) Plaintiff's frequency and extent of treatment is inconsistent with her allegations. Tr. 29-32.

The ALJ's first reason for rejecting Plaintiff's symptom statements, that she

made inconsistent statements regarding her medication side effects, is specific,
clear and convincing.  The ALJ may consider "ordinary techniques of credibility
evaluation, such as the claimant's reputation for lying, prior inconsistent
statements . . . and other testimony by the claimant that appears less than candid."
*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Here, Plaintiff testified at
the hearing that she experienced side effects from the medications she takes to treat
her mental health symptoms, including sleepiness.  Tr. 81-82.  However, when
asked by her providers, she stated she was not experiencing any side effects.  Tr.
638 (October 19, 2017, Plaintiff "denies any negative effects from the
medication"); Tr. 631 (December 21, 2017, Plaintiff "denies any negative effects
from the medication"); and Tr. 627 (January 16, 2018, Plaintiff "denies any
negative effects from the medication").  Plaintiff was taking the same mental
health medications at the time of the hearing as at the time the comments were
made to her providers: trazodone.  Tr. 81, 628, 632, 640.  Therefore, the ALJ's
observation of inconsistent statements is supported by objective evidence and
meets the specific, clear and convincing standard.

The ALJ's second reason for rejecting Plaintiff's symptom statements, that
her allegations were inconsistent with the minimal and mild physical and
psychological examinations, is specific, clear and convincing.  Objective medical
evidence is a "relevant factor in determining the severity of the claimant's pain and
its disabling effects," but it cannot serve as the only reason for rejecting a

claimant's symptom statements. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). As addressed above, the majority of the psychological observations made in the record were normal. Therefore, this meets the specific, clear and convincing standard.

The ALJ's third reason for rejecting Plaintiff's symptom statements, that she routinely appeared in no acute distress, is specific, clear and convincing. An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's testimony. *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, district courts have questioned the applicability of the generic chart note of "no acute distress" to chronic conditions. *See Toni D. v. Saul*, No. 3:19-cv-820-SI, 2020 WL 1923161, at *6 (D. Or. April 21, 2020) *citing, Mitchell v. Saul*, No. 2:18-cv-01501-GMN-WGC, 2020 WL 1017907, at *7 (D. Nev. Feb. 13, 2020) ("Moreover, the court agrees with Plaintiff that notations that Plaintiff was healthy 'appearing' and in no 'acute' distress do not distract from the findings regarding Plaintiff's chronic conditions."); *Richard F. v. Comm'r of Soc. Sec.*, No. C19-5220 JCC, 2019 WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019) ("Clinical findings of 'no acute distress' do not undermine Plaintiff's testimony. 'Acute' means 'of recent or sudden onset; contrasted with chronic.' Oxford English Dictionary, acute (3d ed. December 2011). Plaintiff's impairments are chronic, not acute."). Here, the ALJ found that "[t]he lack of observations of the claimant presenting in distress or

discomfort is inconsistent with the claimant's allegations of extremely limiting pain and constant symptoms." Tr. 30.  Specifically, Plaintiff cited her pain being a 9-10/10 while in provider's care, yet she appeared with appropriate mood and affect and unlabored breathings.  Tr. 30 *citing* Tr. 558-60.  Again, the ALJ relied on emergency room records showing Plaintiff had been in abdominal pain for three weeks, but she appeared in no acute distress when presenting in the emergency department.  Tr. 30 *citing* Tr. 764-67.  The ALJ found that this "demonstrate[s] the claimant was not exhibiting notable external signs of pain or discomfort which is inconsistent with the allegations of disability primarily based on pain.  Tr. 30.  Here, the ALJ has cited examples of times when Plaintiff was complaining of acute pain (9-10/10 on the pain scale) but her providers failed to observe such acute pain.  Therefore, this is not consistent with the above cited cases where the claimant's impairments were chronic in nature.  This is a specific, clear and convincing reason.

The ALJ's fourth reason for rejecting Plaintiff's symptom statements, that Plaintiff's allegations are inconsistent with her daily activities, is specific, clear and convincing.  A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony, or (2) "the claimant is able to spend a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*,

885 F.2d 597, 603 (9th Cir. 1989)).  A claimant need not be "utterly incapacitated"

to be eligible for benefits.  *Fair*, 885 F.2d at 603.  The ALJ found that Plaintiff

cared for her mother, had previously applied for disability and was self-employed

after being denied, and was able to drive and that these abilities undermined her

reported allegations.  Tr. 31-32.

The Court acknowledges that the Ninth Circuit has warned ALJs against using

simple household activities against a person when evaluating their testimony:

> We have repeatedly warned that ALJs must be especially cautious in
> concluding that daily activities are inconsistent with testimony about
> pain, because impairments that would unquestionably preclude work and
> all the pressures of a workplace environment will often be consistent with
> doing more than merely resting in bed all day.

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).  Here, the ability to care

for a family member without some discussion of how the care activities were

inconsistent with her allegations is not specific, clear and convincing.  The ALJ's

finding that she was able to almost earn substantial gainful activity in 2012 and

2013 and substantial gainful activity in 2014 and 2015 after she was denied

disability benefits suggests a finding of malingering.  Tr. 31.  The ALJ failed to

discuss the medical evidence surrounding the prior application and a suggestion of

malingering is not supported in the record.  Therefore, this too is not specific, clear

and convincing.  The ALJ's finding that Plaintiff's ability to drive was inconsistent

with her allegations included a discussion of her allegations compared to the skills

required to drive. Tr. 31. Therefore, this determination meets the specific, clear and convincing standard.

The ALJ's fifth reason for rejecting Plaintiff's symptom statements, that the frequency and extent of treatment was not consistent with her allegations, is specific, clear and convincing. Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. §§ 404.1530, 416.930; *Fair*, 885 F.2d at 603; *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (finding the ALJ's decision to reject the claimant's subjective pain testimony was supported by the fact that claimant was not taking pain medication). Conservative treatment can also be "sufficient to discount a claimant's testimony regarding [the] severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Here, Plaintiff sought treatment for her mental health impairments, but the mental health complaints included in the treatment notes are not as severe as those alleged at the hearing. *See supra*. Additionally, Plaintiff testified that she continued to experience severe problems with her wrist, Tr. 78-80, but her treatment records from December 2018 show that this was relieved with a brace, Tr. 1079. Therefore, this meets the specific, clear and convincing standard.

In conclusion, the ALJ provided one reason that did not meet the specific, clear and convincing standard, but any error would be considered harmless as the ALJ provided other legally sufficient reasons. *See Carmickle v. Comm'r, Soc. Sec.*

*Admin.,* 533 F.3d 1155, 1163 (9th Cir. 2008) (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson v. Comm'r. of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination"). Therefore, the Court will not disturb the ALJ's decision.

### CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment so long as it is supported by substantial evidence. 42 U.S.C. § 405(g). After review, the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, ECF No. 17, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, ECF No. 19, is

    **GRANTED**.

///

///

///

1        The District Court Executive is hereby directed to enter this Order and

2    provide copies to counsel, enter judgment in favor of the **Defendant**, and **CLOSE**

3    the file.

4        **DATED** April 18, 2022.

5

6                            LONNY R. SUKO

                  Senior United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

ORDER ~ 27